UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| DOMINIC R. V.,<br>        Plaintiff,<br>   v.<br>MARTIN O'MALLEY, et al.,<br>        Defendants. | Case No. 24-cv-04005-RMI<br><br>**ORDER RESOLVING SOCIAL SECURITY APPEAL**<br>Re: Dkt. Nos. 16, 17 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision finding that Plaintiff was not disabled under Title II and Title XVI of the Social Security Act. *See* Admin. Rec. ("AR") at 1.[1] The Appeals Council of the Social Security Administration declined to review the ALJ's decision. *Id.* As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security, appropriately reviewable by this court. *See* 42 U.S.C. § 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 5, 6), and both parties have filed briefs (dkts. 16, 17, 18). For the reasons stated below, the decision of the ALJ is REVERSED and the case is REMANDED FOR FURTHER PROCEEDINGS consistent with this order.

**BACKGROUND**

Plaintiff was born on March 29, 1985. AR at 115. Plaintiff reports having a "difficult" childhood. AR at 556. In middle school, Plaintiff was placed in a residential school for children with severe emotional disturbances after acting "aggressively" towards peers and adults at school.

---

[1] The Administrative Record ("AR"), which is independently paginated, has been filed in ten attachments to Docket Entry #10. *See* Dkts. 10-1 through 10-10.

1  AR at 634, 637, 936, 942, 945. Plaintiff has suffered from a learning disorder since he was a child,

2  and was diagnosed with attention deficit hyperactivity disorder ("ADHD"), Specific Reading

3  Disorder, and Autism Spectrum Disorder. AR at 951, 601, 667, 2190. Plaintiff reports that he has

4  taken medication for ADHD since he was eight years old. AR 2184. Plaintiff graduated from high

5  school and was in special education throughout school. AR at 94.

6      Since childhood, Plaintiff reports being "confused and sad." *Id.* Since approximately 2000,

7  the year Plaintiff's father passed away, Plaintiff consistently reports symptoms such as depressed

8  mood (*id.* at 956), hopelessness (*id.* at 964, 1285, 1309, 1341, 2149, 2188), anxiety (*id.* at 956),

9  paranoia (*id.* at 131, 955), withdrawal (*id.* at 555, 593, 482, 902, 909, 1285, 1306), memory

10  problems, which worsened after contracting COVID in 2022 (*id.* at 129), trouble concentrating on

11  things (*id.* at 1350), and avoidance (*id.* at 124, 1306). Regarding his avoidance, for example, he

12  testified in 2023, that he no longer went on short walks in the park, as he used to, because he was

13  "scared of getting COVID again." AR 122.  Plaintiff's efforts to try to obtain help for depression,

14  anxiety, and general life stress is reflected in the record. AR 866, 902, 909, 1285, 1296.

15      In addition to his mental health conditions, Plaintiff suffers from several physical ailments.

16  Plaintiff is morbidly obese and has struggled with his weight since approximately 2012 and suffers

17  from hypertriglyceridemia with chest pains. AR 475, 905, 2179. He reports that he has physical

18  issues related to the obesity, including back pain (*id.* at 1259, 1270, 1315, 2179), pain in his feet

19  (*id.* at 600), and asthma (*id.* at 2061). He also reports that it is hard for him to stand, bend, or sit

20  for long periods of time. *Id.* at 463.

21      Plaintiff has also been diagnosed with a series of conditions in his right eye, including

22  exotropia in his right eye (meaning it is turned outward), presbyopia, myopia, and astigmatism

23  with suspected glaucoma bilaterally, but is "afraid" of getting surgery. AR at 124. He refuses to

24  get glasses because he does not like "people staring at me for too long" and worries that people

25  would stare at a thick lens. *Id.* Plaintiff takes medication for high blood pressure (*id.* at 2185) and

26  has a history of taking psychiatric medication (*id.*).

27      The record also indicates that Plaintiff suffers from some form of severe sleep apnea.

28  Plaintiff consistently reports poor and "restless" sleep (*id.* at 733, 909) and falls asleep frequently

and involuntarily each day (*id.* at 905, 221, 593, 596, 608, 1285). He testified that he falls asleep "most days" and will sleep for three hours if no one wakes him up. AR at 128. Plaintiff starting using a CPAP machine in 2015 (*id.* at 1617), but he reports that even when he was using it, he did not use it throughout the whole night (*id.* at 904). Additionally, since his CPAP machine was recalled in approximately 2022, Plaintiff has not used the machine out of fear that the recalled machine could harm him. AR at 126, 608, 1617.

**PROCEDURAL HISTORY**

Plaintiff was initially determined to be disabled on March 29, 2003, based on Oppositional Defiant Disorder and Speech/Language Impairment. AR at 141, 555. In 2005, the Agency contracted with Dr. Rosemarie Ratto to perform a Consultative Examination in connection with Plaintiff's "Age 18 Redetermination." AR at 637-41. On March 24, 2005, the date of the comparison point decision ("CPD"), Plaintiff was again determined to be disabled. AR at 20, 141, 591. At the time of the CPD, Plaintiff had the following medically determinable impairments: ADHD, severe emotional disturbance, and a learning disorder. *Id.* These impairments were found to meet section 12.02, which is the listing for neurocognitive disorders, of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. Part 404.1520(d) and 416.920(d)). *Id.* On June 16, 2023, during a continuing disability review, Plaintiff was found no longer disabled as of March 23, 2015, due to a finding that Plaintiff had experienced medical improvement from that date forward and thus was no longer disabled. AR at 22.

*August 2018 Hearing*

On August 28, 2018, the ALJ held a hearing with Plaintiff. AR at 89. At the time of the hearing, there was an outstanding psychological evaluation by Dr. Rosemarie Ratto, Ph.D. ("Dr. Ratto"). Plaintiff testified that the last time he had worked was in approximately 2013, as a delivery driver for Pizza Hut. AR at 92. He reported that the job had lasted about five to six months, and that he "was just fired" at the end. AR at 93. He reported that he got "bad headaches" and that his feet were "hurting really bad" during the job. *Id.* As a result of these symptoms, he testified, he did not try looking for another job. *Id.*

Plaintiff also testified to both his mental and physical struggles, and their interaction.

Regarding his mental state, Plaintiff explained that he had tried to get help at Kaiser Permanente, but that it is "like they just want me to figure it out, figure how to help myself by myself." AR at 94. Plaintiff also explained that he feels "depressed, hopeless" and "tries to ignore it." AR at 95. Plaintiff explained that his memory is "somewhat good" but that he has difficulty concentrating and gets "distracted a lot". AR at 97. In fact, when he explained his feelings of depression and hopelessness at the hearing, he lost his train of thought. *Id.* Plaintiff noted that, because of his struggles with focusing on a single task, he would require a five-minute break every thirty minutes. AR at 98, 110.

Regarding his physical ailments, Plaintiff testified that, because of his issues with his right eye, he cannot read for more than four minutes without getting a headache. AR at 100. He also explained that his obesity stems from his mental health issues, testifying that "it's hard to lose weight when . . . I have a lot of stress in my life" related to "stuff from the past." AR 94.

When asked about his sleep quality, Plaintiff testified that he slept "very good" with the sleep apnea mask, but that he "sometimes" forgot to put it on. AR at 100. Plaintiff further explained that, even though he used the mask approximately five times per week, he woke up "[p]robably three times" per night and is often "so tired" that he does not put his mask back on after he wakes up. AR 100-101. When asked by his attorney how many days per week he felt tired, Plaintiff responded, "Oh, the whole week." AR 101. Plaintiff explained that he was able to assist his mother with groceries at the grocery store, and that he is able to go to the movies with his friend, and that people are generally "too judgmental" of him. AR 102.

At the hearing, a vocational expert ("VE") testified, and answered hypotheticals posed by the ALJ, and identified a handful unskilled jobs that could be available to Plaintiff under the ALJ's hypothetical (e.g., hand packager and auditing clerk). AR at 108, 109. Plaintiff's attorney, at the hearing, clarified and confirmed with the VE that a person who was off task more than 15 percent of the time would "fall under off task" as more than six minutes per hour, and as a result, would not be employable in the jobs listed by the expert during the hearing. AR at 110-11.

*Evaluations by Dr. Ratto*

In 2018, Plaintiff's counsel arranged for Plaintiff to have an evaluation performed by Dr.

4

Ratto on August 20, 2018. AR at 600, 953. Pursuant to Dr. Ratto's report, the sole purpose of the evaluation was to aid in the assessment of occupational disability and to provide diagnostic impressions to the Social Security Administration. AR at 956. Dr. Ratto reviewed approximately three years of Plaintiff's medical records from Kaiser Permanente, among other records, and conducted the following objective assessments of Plaintiff: Pre-Test Interview/History/Mental Status Exam; Bender-Gestalt II; Trails A& B; Wechsler Adult Intelligence Scale-IV (WAIS-IV); Wechsler Memory Scale-IV (WMS-IV); Beck Depression Inventory-II (BDl-ll); and, Beck Anxiety Inventory (BAI). AR at 953.

During the evaluation, Dr. Ratto noted that Plaintiff had significant problems concentrating during testing and staying awake. AR at 955. Dr. Ratto further noted in her evaluation that Plaintiff indicated "problems with sleeping and using the sleep machine nightly." *Id.* Dr. Ratto, based on her two meetings with Plaintiff, diagnosed Plaintiff with Major Depressive Disorder, Binge Eating Disorder, ADHD with predominantly inattentive presentation, and History of a Learning Disorder. AR at 956. Dr. Ratto found that Plaintiff exhibited a "marked" level of impairment in the following "work-related abilities": carry out short and simple instructions, understand and remember detailed instructions, carry out detailed instructions, maintain adequate pace and persistence to perform complex/detailed tasks, adapt to changes in job routine, withstand the stress of a routine work day, interact appropriately with co-workers, supervisors, and public on a regular basis (*id.* at 957), and "moderate to marked" impairment in the following work-related abilities: ability to understand and remember short and simple instructions, and ability to maintain adequate pace and persistence to perform simple tasks. *Id.*

*Telehealth Evaluations by Dr. San Pedro*

At the request of Plaintiff's counsel, Plaintiff underwent a telehealth psychological evaluation performed by Lara San Pedro, Psy. D ("Dr. Pedro") on February 10 and 17, 2023. AR at 2183. Dr. Pedro conducted a clinical interview of Plaintiff as well as a clinical observation, and reviewed reports by Dr. Ratto, as well as reports related to Plaintiff's development, academic, psychiatric, and medical history. AR at 2183-2186. Dr. Pedro observed that Plaintiff "often closed his eyes and looked like he was sleeping" throughout her evaluation of Plaintiff. AR at 2189. Dr.

Pedro's report makes the following conclusions with respect to cognitive, emotional, and autism-related assessments.

- *Cognitive Test Results.* Pursuant to Dr. Pedro's report, Plaintiff scored a 58 in verbal comprehension, described as "Significantly Impaired", and a 69 in working memory, described as "Impaired". *Id.*
- *Emotional Functioning Results.* Dr. Pedro reports that Plaintiff met the criteria for depressive disorder in the severe range. AR 2188. He reported symptoms of feeling down, depressed, or hopeless, trouble falling asleep and sleeping too much, poor appetite, trouble concentrating, and being restless. *Id.*
- *Autism-Related Assessment Results.* Pursuant to the report, overall, Plaintiff's scores indicated a very likely probability of DSM-5 autism spectrum disorder at severity level 2 or 3, requiring substantial support. AR at 2190.

Based on these results, Dr. Pedro concluded that Plaintiff has "severe functional limitations" and that his symptoms make it "difficult to remember instructions, procedures, rules and task lists, and complete tasks in an accurate and timely manner." AR at 2197.

*Evaluation by Katherine Jacobson, LCSW*

On approximately March 22, 2022, Katherine Jacobson, Licensed Clinical Social Worker ("LCSW"), assessed Plaintiff. She opined that Plaintiff exhibited "severe" challenges in both vocational and health areas, noting that Plaintiff's mental health symptoms prevented him from working, and that Plaintiff's depression has made it difficult for him to connect with mental and physical health professionals. AR at 2178-79.

*April 2023 Hearing*

Following remand from the Appeals Council on April 2, 2020, Plaintiff testified before the ALJ again on April 20, 2023. AR at 115-140. At the hearing, Plaintiff appeared in person and was represented by his attorney, Kate Walsham. AR at 115. Plaintiff confirmed at the hearing that he used a CPAP machine to sleep "most of the time" but also that he had not been using the machine since the recall. AR at 125. He testified that he was supposed to be getting a new machine but had not yet received it. AR at 126. He testified that, "by the way they explained it, it's like I could

1  choke on the little filter if it breaks off, and I just don't want to be in that situation." *Id.* He

2  explained that he sleeps on an adjustable bed, and that it is "okay" but that he wakes up "sore"

3  both in the middle of the night and in the morning. AR at 127. He explained that he typically goes

4  to sleep about four hours after he wakes up. *Id.* Although a VE appeared at the hearing, he simply

5  adopted the testimony of the 2018 VE. AR 139.

*Summary of the ALJ's Most Recent Decision*

The ALJ denied Plaintiff's claim in a hearing decision dated June 13, 2023. The ALJ in this case engaged in the required five step sequential evaluation process.[2] At Step One, the ALJ determined that Plaintiff had not performed substantial gainful activity through the date of his decision, and thus did not address in detail Plaintiff's recent work activity. AR at 20. At Step Two, the ALJ determined that Plaintiff had severe physical and mental impairments, including myopia, glaucoma, obesity, major depressive disorder, binge-eating disorder, ADHD, history of learning disorder, and autism. AR at 20. The ALJ acknowledged Plaintiff's allegation of sleep apnea but found that this condition did not constitute a severe medically determinable impairment during the adjudicatory period. AR at 23. The ALJ observed that the condition appeared to be "overall managed with use of a CPAP machine." AR 23.

At Step Three, the ALJ found that, since March 1, 2015, none of Plaintiff's conditions, considered individually and in combination, met or equaled any listed impairment. AR at 21. In formulating Plaintiff's residual functioning capacity ("RFC"), the ALJ determined that Plaintiff could perform less than the full range of light work, as defined in the applicable regulations. AR 23. In reaching this determination, the ALJ found that Plaintiff's determinable impairments "could reasonably be expected to cause the alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical evidence and other evidence for the reasons explained in this decision." AR at 24. The ALJ found these statements to "affect the claimant's ability to work only to the extent

---

[2] The ALJ refers the process as an eight-step evaluation for the Title II claim and a seven-step evaluation process for the Title XVI claim – but this court finds that, regardless, the necessary steps were taken. AR at 19.

1    they can reasonably be accepted as consistent with the objective medical and other evidence." AR
2    25.
3           The ALJ also noted Dr. Pedro's observations of Plaintiff as "extremely fatigued" during
4    her evaluation, with mildly slurred and slow responses. AR at 28. The ALJ, however, gave "little
5    weight" to the opinion of Dr. Pedro, finding her report of "marked and extreme limitations" to be
6    "inconsistent with the record as a whole." AR at 29. The ALJ reported that Plaintiff has been able
7    to visit friends, drive to the hearing, make appointments, groom himself, and travel to Modesto
8    and Nevada, which "are contrary" to what would be expected of someone who has the type of
9    marked and extreme limitations found by Dr. San Pedro. *Id*. The ALJ further provided that Dr.
10   Ratto's evaluation "may indicate exacerbation of the claimant's symptoms, lack of cooperation
11   due to extreme sleepiness, possibly related to sleep apnea with unknown compliance with use of
12   the CPAP, or other causes" but that "Dr. Ratto's opinion that the claimant had marked limitations
13   is inconsistent with the record." *Id*.
14          Ultimately, based on the vocational expert's testimony, the ALJ concluded that Plaintiff
15   could work as an office clerk, hand packager, or auditing clerk. AR 31. Accordingly, the ALJ
16   determined that Plaintiff was not disabled. *Id.*
17          Plaintiff appeals.

**STANDARDS**

19          The Social Security Act limits judicial review of the Commissioner's decisions to final
20   decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact,
21   if supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of
22   review and can only set aside a denial of benefits if it is not supported by substantial evidence or if
23   it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir.
24   1995). The phrase "substantial evidence" appears throughout administrative law and directs courts
25   in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148,
26   1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind
27   might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v.
28   NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir.

8

1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, courts "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## ANALYSIS

The court finds that the ALJ erred at Step Two and Step Three of the analysis.

*Step Two Errors*

Plaintiff raises seven claims in this court – including the claim that the ALJ erred by failing to find Plaintiff's obstructive sleep apnea as a severe impairment. *See generally* Pl. Br. (dkt. 16) at 5, 24-25. The court's review of the ALJ's decision bears out the fact that the ALJ did not properly consider the evidence of Plaintiff's sleep apnea at Step Two. *See* AR at 23. As discussed above, multiple doctor notes report that Plaintiff is generally healthy but suffers from obesity and obstructive sleep apnea. *See, e.g.,* AR at 968, 591. Furthermore, the court finds that the ALJ appears to have not considered that evidence at Step Three by properly evaluating Plaintiff's sleep apnea symptoms and limitations in light of the requirements set forth under Listing 12.02 (Neurocognitive disorders). *See id*. at 21-22. Neither does it appear that the ALJ considered this evidence when formulating the RFC. *See id*. at 23-30. What is puzzling is the fact that the ALJ twice uses evidence of Plaintiff's extreme fatigue due to sleep apnea to justify giving less weight to the opinions of Dr. Prado and Dr. Ratto (*see id*. at 21, 29), but that he did so without explicitly considering its effects on Plaintiff's work-related abilities. *See, e.g.,* AR 29 ("The evaluation by Dr. Ratto . . . may indicate exacerbation of the claimant's symptoms, lack of cooperation due to extreme sleepiness possibly related to sleep apnea with unknown compliance with use of the CPAP, or other causes, but Dr. Ratto's opinion that the claimant had marked limitations is inconsistent with the record.").

1    Defendant submits that the ALJ's failure in this regard was harmless error. *See* Def.'s Opp.
2    (dkt. 17) at 11-13. The gist of Defendant's argument is that (1) Plaintiff has not shown that he was
3    prejudiced as a result of the ALJ's omission; (2) that the ALJ considered Plaintiff's *other* severe
4    impairments; and (3) Plaintiff's treatment record since disability cessation does not establish
5    functional limitations directly attributable to sleep apnea – as Plaintiff's condition is managed with
6    the CPAP machine; and (4) Plaintiff does not articulate what additional limitations are warranted
7    due to obstructive sleep apnea beyond the already restrictive RFC. *See id*. at 11-13.

8    Step Two's evaluation is a *de minimus* test intended to weed out patently groundless
9    claims and the most minor of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987);
10   *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2005) (stating that the step two inquiry is a *de*
11   *minimus* screening device to dispose of groundless claims) (quoting *Smolen v. Chater*, 80 F.3d
12   1273, 1290 (9th Cir. 1996)); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (step two is a
13   "*de minimis* threshold"). An impairment is non-severe at Step Two only if the evidence establishes
14   a slight abnormality that has only a minimal effect on an individual's ability to work. *Smolen*, 80
15   F.3d at 1290.

16   Given the record of evidence supporting Plaintiff's obstructive sleep apnea, and given the
17   fact that the ALJ was clearly aware of it, the court concludes that the ALJ erred in finding that
18   condition to be subjected to weeding out at Step Two as patently groundless, or as the most minor
19   of impairments. Instead, the court finds that Plaintiff's obstructive sleep apnea warrants serious
20   consideration in the development of a full and fair disability record, both at Step Three and in the
21   ultimate formulation of Plaintiff's RFC. In fact, it appears to the court that the combination of the
22   physical and mental conditions described in Plaintiff's brief and Reply (*see, e.g.,* Pl. Reply (dkt.
23   18) at 9) may indeed be disabling – however – due to the ALJ's failure to properly develop the
24   record and properly engage the five-step sequential evaluation process, further proceedings are
25   necessary.

26   Moreover, to the extent the ALJ dismissed Plaintiff's sleep apnea as non-severe for lack of
27   evidence indicating "ongoing, severely limiting pathology," the ALJ failed to fully and fairly
28   develop the record. If the record failed to sufficiently address Plaintiff's sleep apnea, it was the

ALJ's duty "to conduct an appropriate inquiry," by, for example, ordering a consultative examination, "subpoenaing [Plaintiff']s physician, or submitting further questions to [Plaintiff's physicians]," or questioning Plaintiff himself. *See Smolen*, 80 F.3d at 1288.

*Harmlessness*

The failure to find a disability severe at Step Two is considered harmless if the non-severe disability is nonetheless taken into account at Steps Four and Five. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Here, however, the court cannot conclude that the omissions at Step Two were harmless. The ALJ appears to have factored in Plaintiff's other severe impairments at Steps Four and Five, given that the ALJ found Plaintiff to have the RFC to perform less than the full range of light work, but there is no indication that the ALJ factored in Plaintiff's sleep apnea in this step of the analysis.[3] Because the Step Two findings of non-severity as to Plaintiff's sleep apnea appear to have affected other parts of the ALJ's analysis, remand is required.

*Step Three Errors*

While Step Two errors are sufficient to warrant remand on their own, *see Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012), the court also discerns error in the ALJ's Step Three analysis and will address it now for the sake of efficiency. The ALJ assessed Plaintiff with a moderate limitation in interacting with others. AR at 21. The ALJ suggests that Plaintiff has been able to socialize with friends and goes to a movie. AR at 21. In fact, the record is replete with evidence of Plaintiff's avoidance of others, often at the expense of his mental and physical health. While the record shows that Plaintiff can visit one of his friends, and has gone to the movies, the record also shows that he is now afraid of going outside even for a five-minute walk because of COVID. He also does not get glasses because he fears people looking at him, and fears that glasses will exacerbate that fear. Katherine Jacobson, LCSW, furthermore, concluded that Plaintiff's mental health symptoms prevented him connecting with mental and physical healthcare professionals, suggesting that Plaintiff struggles to connect even with the very people trained to care for him. *See*

---

[3] Furthermore, as Plaintiff points out, had the ALJ properly considered Dr. Ratto's opinion, Plaintiff may have met, as he had before, the B Criteria of Listing 12.02 (Neurocognitive disorders), among other listings, because Plaintiff would have had marked impairments in the listed functional domains. *See* Pl. Br. (dkt. 16) at 21.

*generally* AR at 2178-79. That Plaintiff has been to the movies with a friend is not substantial evidence of his ability to work with multiple other people in light of the many, many days that he has spent inside, avoiding people, and the evidence of him avoiding getting care for himself, including getting glasses or surgery to correct his right eye.

Finally, the ALJ found Plaintiff to have only a moderate limitation in understanding, remembering, or applying information. In reaching this conclusion, the ALJ discredits Dr. Ratto's 2018 evaluation because Plaintiff had trouble staying awake after testing began. *See* AR at 21-22. That evaluation by Dr. Ratto found Plaintiff's testing scores related to memory to be extremely low. Similarly, Dr. Pedro performed a comprehensive evaluation of Plaintiff and found that he would have marked to extreme impairments in understanding, remembering, and carrying out short instructions. The ALJ again, as noted above, assigned Dr. Pedro's findings little weight because Plaintiff appeared sleepy during her evaluation of him. Given the record evidence that Plaintiff reports symptoms of sleepiness every day, rejection of multiple psychological evaluations based on this symptom was error.

In short, the court determines that it was error for the ALJ to find Plaintiff's sleep apnea as non-severe at Step Two, and for the ALJ to discount the findings of Dr. Ratto and Dr. San Pedro as inconsistent with the record. The ALJ's failure to develop the record at Step Two is not harmless, as proper consideration of Plaintiff's impairments may impact the ALJ's RFC analysis and his ultimate disability determination. This is especially true where the VE testified that Plaintiff, if off-task such as to make him ineligible for the jobs that were identified by the ALJ, and could even lead to a determination of disability – and where there is evidence in the record that the sleep apnea in combination with Plaintiff's other issues could cause him to be off-task at that level. Accordingly, the court **REMANDS** for further proceedings to develop the record as to the effect of Plaintiff's sleep apnea, and its interaction with his other impairments, on his ability to function in the workplace. The ALJ should also reconsider whether Plaintiff meets any of the paragraph B criteria in light of the findings of Dr. Ratto and Dr. Prado as discussed above, or order further testing as needed.

**CONCLUSION**

Accordingly, this case is **REMANDED** for further proceedings consistent with the holdings and instructions provided herein. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: September 3, 2025

_____
ROBERT M. ILLMAN
United States Magistrate Judge